FILED
01/08/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2018

IN RE GABRIELLA H., ET AL.[1]

Appeal from the Juvenile Court for Montgomery County
Nos. 17-JV-1061 & -1062    Tim Barnes, Judge

_____

No. M2018-00723-COA-R3-PT
_____

This action involves the termination of a mother's parental rights to her minor children. Following a bench trial, the court found that clear and convincing evidence existed to support the statutory grounds of abandonment by an incarcerated parent and for failure to provide a suitable home, substantial noncompliance with the permanency plans, and the persistence of conditions which led to removal. The court further found that termination was in the best interest of the children. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and BRANDON O. GIBSON, J., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Krystal Marie C.

Herbert H. Slatery, III, Attorney General & Reporter, and Alexander S. Rieger, Deputy Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

Elizabeth D. Rankin, Clarksville, Tennessee, guardian ad litem for the minors.

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

**OPINION**

## I. BACKGROUND

On June 22, 2016, the Department of Children's Services ("DCS") received a referral alleging that twins Gabriella H., born in May, 2016 and Makenziee H., born in May, 2016, had been exposed to drugs. The petition also alleged that the parents – Krystal C. ("Mother") and Jeffrey H. ("Father") – had a long history of domestic violence and drug use.

Upon the referral, DCS visited the home and administered drug screens to both parents. Mother tested positive for benzodiazepines. DCS then placed the children with a family. Mother, however, was unwilling to work with the couple, and due to the lack of appropriate placement options, DCS eventually returned the children to the parents (subject to a non-custodial family permanency plan). Pursuant to the terms of the plan, the parents were to ensure that the children remained in a safe and drug-free environment. They both asserted that they would maintain sobriety while caring for the children and agreed to submit to random drug screens.

On July 14, 2016, Mother tested positive for benzodiazepines and marijuana. After a second drug screen less than a week later, Mother again tested positive for both benzodiazepines and marijuana. On July 19, 2016, DCS filed a Petition to Adjudicate Dependency and Neglect and sought temporary custody. A protective custody order was issued that same day.

After the children were placed in DCS's custody, permanency plans were created. Under the first plan, dated August 11, 2016, Mother was obligated to complete an alcohol and drug assessment as well as a clinical assessment and required to follow all recommendations. In addition to the drug assessment, Mother was expected to undergo random drug screens and to complete hair follicle drug tests. Mother was also required to attend domestic violence classes. Further, Mother was required to visit the children, maintain a legal source of income to pay child support, and provide a safe and suitable home for the children. The court ratified the plan and found that it was reasonable, necessary, and in the best interest of the children. In January 2017, DCS issued a revised permanency plan that required Mother to complete the same tasks as the initial one.

Contrary to the requirements of the plans, Mother's involvement in the lives of the children decreased. Her last visit to the children was on November 10, 2016, between the first and second permanency plans. Four months later, Mother was incarcerated for driving on a revoked license. Over the next several months, Mother was incarcerated three more times: in May 2017, for theft; in June 2017, for criminal impersonation; and

in August 2017, for theft and simple possession. In addition to engaging in criminal conduct, Mother also failed to report for required drug screens, complete domestic violence and drug and alcohol programs, or pay regular child support.

On July 18, 2017, DCS filed a petition to terminate the parental rights of Mother and Father. Trial on the petition was first scheduled for January 25, 2018, but because Father was not present, the court rescheduled the trial for March 7, 2018. Despite both parents not appearing on March 7, the trial took place as scheduled. In a written order filed on May 24, 2018, the court terminated the parental rights of both parents.[2] The court found that Mother abandoned the children by engaging in conduct exhibiting a wanton disregard for their welfare, failed to provide a suitable home for the children, neglected to comply with multiple permanency plans, and failed to remedy the persistent conditions that necessitated foster care for the children. The court found clear and convincing evidence to hold that the parental rights of Mother should be, in the best interest of the children, terminated. Mother filed a timely notice of appeal.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether the trial court properly determined that grounds existed to terminate Mother's parental rights.

B.    Whether the trial court properly determined that termination of Mother's parental rights was in the best interest of the children.

C.    Whether the trial court proceeded properly by conducting the termination trial when Mother had notice of the hearing and was voluntarily absent from the courtroom.

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*,

---

[2] Father did not appeal the termination of his parental rights.

140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.   DISCUSSION

As indicated above, the court found four grounds for the termination of Mother's parental rights: abandonment by exhibiting wanton disregard, failure to provide a suitable home, substantial noncompliance with permanency plan, and a failure to remedy persistent conditions. The court also found that termination was in the best interest of the children. Mother does not dispute the statutory grounds supporting the termination decision and concedes that "there is no contradictory proof in the appellate transcript to dispute the trial court's findings of legal grounds to support the termination of parental rights." Further, she does not directly challenge the trial court's finding that termination was in the best interest of the children. Nevertheless, in such a case, our Supreme Court has directed that "the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington*

*H.*, 483 S.W.3d at 525-26 (internal citation and footnote omitted).  Accordingly, we will review each ground in turn.

## A.
### Abandonment by exhibiting a wanton disregard for welfare

Abandonment occurs when "[a] parent or guardian . . . has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]" Tenn. Code Ann. §§ 36-1-113(g)(1) & 36-1-102(1)(A)(iv).  While the term "wanton disregard" has been left statutorily undefined, this court has repeatedly held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *See In re Audrey S.,* 182 S.W.3d at 867-868.  "Incarceration severely compromises a parent's ability to perform his or her parental duties.  A parent's decision to engage in conduct that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id.* at 866.  While incarceration alone is not a ground for termination, it may serve as "a triggering mechanism that allows the court to take a closer look . . . to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.*

"[P]arental conduct exhibiting a wanton disregard for a child's welfare may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the parent's incarceration." *State, Dep't of Children's Services v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009).

After the children were removed from her custody, Mother neither ceased her criminal activity nor took the required steps to remedy the circumstances leading to the children's removal.  She continued to use drugs.  On March 29, 2017, Mother was incarcerated for driving on a revoked license.  Over the months that followed, she was incarcerated for criminal impersonation, theft, and simple possession.  In the four-month period before she was incarcerated, Mother did not once visit her children.  Her last visit to them occurred on November 10, 2016.  She was aware of her duty to visit, knew the children were in foster care, and knew how to schedule visits.  Mother provided no justifiable excuse for not visiting.  Further, despite being able to work, Mother willfully made no child support payments – before or during the four-month period.  In our view,

the trial court correctly concluded that Mother abandoned her children by "engaging in conduct that would exhibit a wanton disregard for the children."

## B.
### Abandonment by failing to establish a suitable home

A parent may be found to have abandoned his or her child by failing to establish a suitable home. The relevant statutory provision provides, in pertinent part, as follows:

> The child has been removed from the home of the [parent] as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child [ ], and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the [parent] to establish a suitable home for the child, ***but that the [parent has] made no reasonable efforts to provide a suitable home and [has] demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.*** The efforts of the department or agency to assist a [parent] in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the [parent] toward the same goal, when the [parent] is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii) (emphasis added). A "suitable home" means more than adequate "physical space" – it requires that the appropriate care and attention be given to the child as well. *In re A.D.A.,* 84 S.W.3d 592, 599 (Tenn. Ct. App. 2002). This court has determined that a suitable home is one that is free from drugs and domestic violence. *Dep't of Children's Servs. v. C.W.*, No. E2007-00561-COA-R3-PT, 2007 WL 4207941, at *3 (Tenn. Ct. App. Nov. 29, 2007). Additionally, matters related to counseling and assessments are "directly related to the establishment and maintenance of

a suitable home." *In re M.F.O.*, No. M2008-01322-COA-R3-PT, 2009 WL 1456319, at *5 (Tenn. Ct. App. May 21, 2009).

This ground requires DCS to make reasonable efforts to assist the parent. Tenn. Code Ann. § 36-1-102(1)(A)(ii); *In re Kaliyah S.,* 455 S.W.3d 533, 553 n. 29, 554 n. 31, 555 n. 32 (Tenn. 2015). DCS's efforts to assist a parent "may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal." Tenn. Code Ann. § 36-1-102(1)(A)(ii). "[P]arents desiring the return of their children must also make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required DCS to remove their children from custody." *In re Shameel S.,* No. E2014-00294-COA-R3-PT, 2014 WL 4667571, at *5 (Tenn. Ct. App. Sep. 19, 2014) (quoting *In re Giorgianna H.,* 205 S.W.3d 508, 519 (Tenn. Ct. App. 2006) overruled on other grounds by *In re Kaliyah S.,* 455 S.W.3d 533 (Tenn. 2015)).

After the children were declared dependent and neglected, they were placed in state custody on July 18, 2016. From that date on, DCS made efforts to help Mother establish a suitable home. These efforts included, inter alia, reviewing and discussing the termination criteria with Mother, creating two permanency plans, scheduling visitation, arranging transportation for visitation, and paying for domestic violence and drug and alcohol classes. The family service worker testified that Mother was provided a resource manual and transportation to obtain employment. In addition to the domestic violence classes, DCS referred Mother to complete alcohol and drug assessments. According to DCS, Mother "completed a clinical assessment and an alcohol and drug assessment, but she did not follow through." She did not complete any services.

Mother was advised on at least two occasions – May 14, 2015, and August 11, 2016 – that a failure to make reasonable efforts to provide a suitable home would lead to the termination of her parental rights. Mother, however, declined to take full advantage of DCS's efforts and her home remained unsuitable due to her drug abuse. The record reflects that DCS attempted to aid Mother in her search for suitable housing. However, as the court found, Mother does not have stable housing. Clear and convincing evidence establishes that Mother abandoned the children by failing to provide a suitable home.

### C.
### Substantial noncompliance with permanency plan

Tennessee law requires the development of a plan of care for each foster child and further requires that the plan include parental responsibilities that are reasonably related to the plan's goal. Tenn. Code Ann. § 37-2-403(a)(2)(A). A ground for termination of parental rights exists when a petitioner proves by clear and convincing evidence that

"[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan."[3]  Tenn. Code Ann. § 36-1-113(g)(2).  To establish noncompliance, the trial court must initially find "that the requirements of the permanency plans are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place."  *In re M.J.B.*, 140 S.W.3d at 656; *see In re Valentine*, 79 S.W.3d at 547.  When the trial court does not make such findings, the appellate court should review the issue de novo.  *In re Valentine*, 79 S.W.3d at 547.  Second, the court must find that the parent's noncompliance is substantial, *In re M.J.B.*, 140 S.W.3d at 656, meaning that the parent must be in "noncompliance with requirements in a permanency plan that are reasonable and related to remedying the conditions that warranted removing the child from the parent's custody."  *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003).  To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement."  *Id.* at *12.  Conversely, "[t]erms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant."  *In re Valentine*, 79 S.W.3d at 548-49.  "Substantial" is defined as "of real worth and importance," *Black's Law Dictionary* (10th ed. 2014), and "the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to that requirement."  *In re Valentine*, 79 S.W.3d at 548.

Notably, this ground for termination does not require that DCS "expend reasonable efforts to assist a parent in complying with the permanency plan requirements."  *In re Skylar P.,* No. E2016-02023-COA-R3-PT, 2017 WL 2684608, at *7 (Tenn. Ct. App. June 21, 2017); *see also In re Kaliyah S.,* 455 S.W.3d at 555 ("[I]n a termination proceeding, the extent of [the Department's] efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

The trial court determined that Mother's responsibilities under both the initial and revised permanency plans were reasonably related to remedying the conditions that warranted foster care for the children.  Both plans required Mother to complete the same tasks and were focused primarily on remedying substance abuse and domestic violence.  She was required to complete a drug and alcohol assessment and to follow all recommendations.  Mother was also obligated to participate in random drug screens.  Although she did complete an alcohol and drug assessment, Mother failed to follow any of the recommendations.  After the assessment, it was recommended that Mother attend a twelve-step program and participate in therapy.  She did neither.  As for the drug screens,

---

[3] The court observed that the criteria for termination of parental rights had been "not only explained during this case, but in a previous case . . . ."

DCS last had an opportunity to administer a screen in November 2016. Mother refused the screen and instead admitted to using marijuana and benzodiazepines. The plans also contained requirements related to remedying the domestic violence in the home, but Mother failed to attend the required domestic violence classes. The plans further required Mother to obtain appropriate housing, pay regular child support, maintain regular visitation, remain involved in the children's lives, maintain weekly contact with DCS, and to provide a legal means of income. Mother met none of these requirements.

With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Mother failed to substantially comply with the requirements of the permanency plan.

**D.**
**Persistence of conditions**

Under Tennessee law, a court may terminate parental rights when:

> (3)    The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A)    The conditions that led to the child's removal *or other conditions* that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>
> (B)    There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>
> (C)    The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3) (emphasis added). Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550. Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.,* 182 S.W.3d at 874.

The statute does not require that only the original conditions leading to removal be used to establish grounds for termination. On the contrary, the statute specifically includes both "[t]he conditions that led to the child's removal or other conditions that in a reasonable probability would cause the child to be subjected to further abuse or neglect." Tenn. Code Ann. § 36-1-113(g)(3)(A). Nor does the statute require that the parent's failure to remedy the conditions be willful. *In re Dakota C.R.,* 404 S.W.3d 484, 499 (Tenn. Ct. App. 2012) ("A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." (quoting *In re A.R.,* No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)).

Here, as the trial court noted, the conditions that led to the removal of the children still persisted. When the children were placed in the state's custody, Mother tested positive for illegal substances, she failed to complete any programs recommended by DCS, and ongoing domestic violence continued in the home. Moreover, once the children were removed, Mother failed to complete random drug screening, an alcohol and drug rehabilitation program, and a domestic violence course. She declined to maintain consistent visitation with the children, neglected her obligation to pay child support, and refused to stay in contact with DCS. Finally, Mother was incarcerated four times since the children were placed in the state's custody. Mother did nothing to remedy the conditions that led to the removal of the children. Furthermore, there is no indication that these conditions will be remedied soon, as Mother's conduct strongly suggests that the situation will not improve. *See Dep't of Children's Serv. v. C.B.H.*, No. E2003-03000-COA-R3-PT, 2004 WL 1698209, at *2 (Tenn. Ct. App. July 29, 2004) ("[T]he history of past behavior is relevant to the issue of future behavior."). Returning the children to Mother's care would greatly diminish their chances of early integration into a safe, stable, and permanent home. Accordingly, we conclude that the conditions leading to the removal of the children persist and, as the trial court noted, there is "little chance that these conditions will be remedied soon."

## E.
### Best interest of the children

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the children. If one or more grounds for termination have been proven, the trial court must next consider whether termination of a parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192-93 (Tenn. Ct. App. 2004). In making this determination, we are guided by the following non-exhaustive list of factors:

- 11 -

(i)      In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[4]

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

---

[4] *In re Kaliyah S.*, 455 S.W.3d at 555 ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White,* 171 S.W.3d at 194 (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

Mother has not made the sort of lasting adjustments necessary to make it safe for the children to be returned. Indeed, as the trial court noted, Mother has made "little or no progress" toward accomplishing the tasks set out in the permanency plans. Similarly, the court found that there was "little chance" that the persistent conditions leading to the removal of the children would be remedied soon. Furthermore, despite DCS's efforts, Mother has not maintained regular visitation or otherwise established a meaningful relationship with the children. The children were just over two months old when they were removed from Mother's custody on July 18, 2016. Mother's last visit with the children occurred in November 2016, when the children were only six months old. By the time of the trial – March 2018 – Mother had not seen the children for more than a year. Additionally, she never paid child support.

The children currently reside in a healthy environment in a foster home where they have bonded with their foster parents and their four siblings, who also live in the home. At the time of trial, the children had lived in the home for nearly two years, and the foster parents had expressed a desire to adopt the children. To remove the children from their foster home and return them to Mother at this point in their lives would be detrimental to their emotional condition and would almost certainly cause them significant harm. Tenn. Code Ann. § 36-1-113(i)(5).

We agree with the trial court's determination that clear and convincing evidence establishes termination of Mother's parental rights was in the best interest of the children. We affirm the decision of the trial court.

Mother argues that the trial court erred by terminating her parental rights when she was not present at trial. We find this argument lacks merit. In fact, we have previously addressed an appeal of a termination of parental rights in which we found that a juvenile court "acted within its authority when it proceeded to conduct the trial even though Mother was not present." *State, Dep't of Children's Servs. v. T.P.H.R.,* No E2006-02670-COA-R3-PT, 2007 WL 2080939, at \*7 (Tenn. Ct. App. July 20, 2007). Mother had notice of the trial and was present before it began. Upon learning that Mother was absent from the courtroom, the court granted time to call out in all of the courtrooms and permitted the attorneys to attempt to contact Mother. When Mother failed to appear, the court conducted a full hearing, requiring the state to prove each element. As Mother had notice of the hearing, was present before it began, and was represented by counsel at the trial, we affirm the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to appellant, Krystal Marie C.

_____
JOHN W. McCLARTY, JUDGE